UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                    Case No. 2:16-cr-20290

v.                                  HONORABLE STEPHEN J. MURPHY, III

D-1, DERRIN ABBOTT,

        Defendant.

_____/

### AMENDED OPINION AND ORDER
### DENYING DEFENDANT'S MOTION TO SUPPRESS [36]

      The United States charged Defendant Derrin Abbott with being a felon in possession of a firearm and ammunition, possession of stolen firearms, and possession with intent to distribute marijuana. Abbott alleges the Government conducted two illegal searches and he therefore filed a motion to suppress evidence seized during the searches. For the reasons stated below, the Court will deny the motion.

### BACKGROUND

      On March 23, 2016, police officers executed a state search warrant at XXX39 Arlington, in Detroit, Michigan. ECF 36-2. The search warrant affidavit set forth an eight-page chronology of suspected criminal activity connected to Abbott and the XXX39 Arlington residence. Also, the affidavit noted that the affiant had served as a Detroit Police Officer for 17 years and was assigned to the Violent Crime Task Force. ECF 36-2, PgID 182. While executing the warrant, police recovered information confirming that Abbott resides at XXX39 and that both XXX39 and XXX45 Arlington have Abbott's name on registration documents. They also recovered clothing items worn in a recent series of robberies, cell phones, laptop computers, cameras, firearms, ammunition, baseball hats,

gym shoes, and video games. During the search, officers spoke to Abbott's girlfriend, Randesha Sutton. Based on the information Sutton provided and other evidence found at XXX39 Arlington, police officers obtained a search warrant for XXX45 Arlington. ECF 36-3. The same affiant authored the search warrant affidavits for both residences. The XXX45 affidavit repeated the supporting facts from the XXX39 affidavit, and added an additional paragraph of information obtained from Sutton and the search of XXX39 Arlington. *Id.* ¶ 40.

At XXX45 Arlington, police recovered stolen video games and consoles, marijuana, numerous firearms, ammunition, cell phones, and several television sets. The Government charged Abbott with multiple crimes, and his motion to suppress followed.

## DISCUSSION

The Fourth Amendment to the U.S. Constitution protects "[t]he right of the people to be secure . . . against unreasonable searches and seizures[.]" U.S. Const. amend. IV. To secure the right, the Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation[.]" *Id.* "Probable cause exists when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991) (quotations omitted). And an affidavit—serving as an Oath or affirmation—"must contain adequate supporting facts about the underlying circumstances to show that probable cause exists." *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996).

When making a probable-cause determination, the "magistrate is simply to make a practical, common-sense decision" given the totality of the facts. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). And when reviewing a search warrant, courts must give "great deference" to the magistrate's determination while ensuring that the magistrate "had a substantial basis

2

for concluding that probable cause existed." *Id.* at 236, 238–39 (alterations omitted). A magistrate's probable cause determination "should be reversed only if arbitrarily made." *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006).

I.    Probable Cause

Abbott argues that the search-warrant affidavits failed to establish probable cause because the affidavits contained only stale, unreliable, and unverified information.

The nine-page search-warrant affidavits laid out—in considerable detail—a chronology of supporting facts related to a series of robberies, Abbott, and the Arlington residences:

- Abbott's telephone was used shortly before, during, or immediately after fourteen robberies that occurred from October 2015 to March 2016. ECF 36-2, 36-3 ¶¶ 8, 9, 12, 13, 14, 15, 16, 17, 19, 20, 21, 24, 29, 30.

- During a December 8, 2015 robbery, police observed Abbott's 2007 Buick parked near the robbery location with a crow bar laying across the back seat floor board. *Id.* ¶ 16.

- On February 1, 2016, shortly after a robbery occurred, Abbott's girlfriend, Sutton, posted a picture of herself on Facebook laying in a bed covered with money. *Id.* ¶ 22. She and the Defendant both reside at XXX39 Arlington. *Id.* ¶¶ 32, 36.

- On February 15, 2016, police officers observed a Chevrolet truck (registered to Abbott's nephew) leave the area of a burglary alarm around 4:00 a.m. and travel to Abbott's house on Arlington. The truck parked and the occupants switched to a Buick Lucerne and drove away while the occupants of XXX39 Arlington drove away in a Saturn belonging to Abbott's girlfriend. The Saturn performed evasive

maneuvers to escape surveillance. Abbott's phone made calls during this episode. *Id.* ¶ 24, 25.

- Two additional robberies occurred on March 17, 2016, during which Abbott's telephone made calls. *Id.* ¶¶ 29–30.

- The affiant noted that he had verified that the telephone number belonged to Abbott through public resources, Verizon Wireless, and Abbott's Facebook profile. *Id.* ¶ 31.

- The affiant noted Secretary of State records verified that Abbott resides at XXX39 Arlington and co-owns "Abbott's Garage". *Id.* ¶ 32.

- Another robbery occurred on March 21, 2016 at the Foot Locker on Mack Ave., Detroit. A surveillance camera captured footage of a Ford Super-Duty pick-up truck with no license plate being used during the robbery. A short time later, the same truck was observed at Abbott's Garage. Police observed the truck enter the garage, unload the contents of its bed, then depart. And a short time after that, a different white pick-up truck left from Abbott's XXX39 residence and arrived at Abbott's garage. Bags were loaded from the garage into the white pick-up truck, which departed and returned to Abbott's house. *Id.* ¶ 38–39.

- When the police executed the search warrant on XXX39 Arlington, Sutton's car was parked in the driveway of XXX45 Arlington. The car contained numerous boxes of shoes. Sutton told officers that Abbott had used her car a few nights prior, and returned home with Foot Locker boxes of gym shoes, new clothes and new baseball caps. She also told officers that she and Abbott had recently been inside XXX45 Arlington, and that Abbott kept a key to XXX45 Arlington on a silver

key chain. The affiant stated that a Wayne County property tax database showed that both XXX39 and XXX45 Arlington were registered to "Derrick Abbott". ECF 36-3 ¶ 40.

Based on all those supporting facts, the affidavits raised a fair probability that police would discover evidence of criminal activity at the Arlington residences. Specifically, the affidavits show that Abbott's phone was consistently used at the same time as a series of robberies, vehicles connected to the robberies arrived and departed from his residence and his business, officers observed his Buick in the vicinity of a robbery with a crowbar in the backseat, Sutton provided statements regarding Abbott's possession of Foot Locker merchandise shortly after the Foot Locker robbery, and the officers observed numerous shoe boxes in Sutton's car parked in front of one of the Arlington residences. Based on the "totality of the circumstances," the Court finds that the search-warrant affidavits provided a "reasonable grounds for belief" that police might find evidence of the robberies in the Arlington residences. *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (en banc) (quotations omitted).

In addition, the affidavits contained recent statements of fact that were sufficiently "closely related to the time of the issue of the warrant as to justify a finding of probable cause at the time." *United States v. Church*, 823 F.3d 351, 356 (6th Cir. 2016) (quotations omitted). Specifically, the affidavits contained observations from January 31, 2016, February 1, 2016, and March 17 and 21, 2016. ECF 36-2, 36-3 ¶¶ 19–39. Thus, the affidavits contained very recent information, including events mere days before the search warrants issued.

And Abbott's assertion that the facts supplied by the affidavit were unverified is

5

unavailing. As described above, the affidavits for XXX39 and XXX45 met the probable-cause standard. The affidavits need not prove that the belief that contraband or evidence of a crime will be found is "more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983). Instead, the search-warrant affidavits must show only a "fair probability" that evidence of criminal conduct will be found. *Illinois v. Gates*, 462 U.S. 213, 238, 244 n.13 (1983). The affidavits for XXX39 and XXX45 Arlington met this standard.

II.   <u>Nexus Between Abbott, Arlington Residences, and Criminal Activity</u>

Abbott argues generally that the affidavits failed to establish probable cause "that the specific things to be searched for and seized" were "located on the property to which entry [was] sought"—the Arlington residences. *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978) (quotations omitted). Specifically, Abbott points out that the affidavits did not state that the affiant had seen stolen property or drugs at the residences, that Abbott sold stolen property or drugs from the residences, or that Abbott cached stolen property or drugs at the residences.

As an initial matter, neither search warrant authorized the seizure of drugs. The affidavits did not mention drugs, either. Abbott's argument that the affidavits did not establish probable cause to seize drugs is therefore correct. But officers may seize "intrinsically incriminating" contraband they come across while conducting an authorized search, *United States v. Wade*, 30 F. App'x 368, 369 (6th Cir. 2002), which is presumably why the officers here seized marijuana from XXX45 Arlington.

Also, the affidavit outlined at least two direct connections between Abbott's alleged criminal activity and the XXX39 Arlington residence. First, on February 15, 2016, police observed a Chevrolet truck depart Abbott's Garage around 3:30 a.m., then depart the area

6

of a burglar alarm 20 minutes later, and return to Abbott's XXX39 Arlington residence. ECF 36-2, ¶ 24. Second, numerous surveillance videos depicted a Ford Super-Duty truck that were used in the robberies, including the Foot Locker robbery. *Id.* ¶¶ 38–39. On March 21, police observed a Ford Super-Duty depart Abbott's Garage at 3:58 a.m. and then, shortly after the Foot Locker was robbed, the same Ford Super-Duty Truck was observed off-loading goods at Abbott's Garage. *Id.* ¶ 39. Moments later, a white pickup truck departed Abbott's XXX39 Arlington residence, drove to Abbott's Garage, loaded up several bags, and then returned to XXX39 Arlington. *Id.* Abbott is connected to both of the locations. He has registration documents for the XXX39 Arlington residence, and he co-owns the business "Abbott's Garage." *Id.* ¶ 32.

And the XXX45 affidavit likewise established a sufficient nexus. The affidavit connects the Ford Super-Duty to the March 21, 2016 Foot Locker robbery, and connects the Ford Super-Duty to Abbott's Garage. ECF 36-3 ¶ 39. Then, the affidavit connects likely stolen Foot Locker apparel and boxes—discovered two days after the robbery—to Abbott's girlfriend's car parked outside Abbott's XXX45 Arlington residence. *Id.* ¶ 40. Also, the affidavit includes Sutton's confirmation that she and Abbott were recently inside XXX45 Arlington and the fact that Abbott kept a key to the residence on a silver key chain. *Id.* The officers further confirmed through Wayne County property tax database, that XXX45 Arlington is registered to "Derrick Abbott." *Id.* And the affidavit describes Sutton's statements acknowledging that Abbott had possession of boxes of gym shoes, clothes, and new baseball caps shortly after the Foot Locker robbery. *Id.*

Moreover, police officers may fairly infer that participants in robberies will store stolen currency or firearms in their house. *United States v. Jackson*, 756 F.2d 703, 705 (9th Cir.

7

1985) (currency); *United States v. Jones*, 994 F. 2d 1051, 1056 (3rd Cir. 1993) (firearms).

An officer may draw reasonable inferences about where evidence may be found based on

the nature of the crime and type of offense committed. *United States v. Williams*, 544 F.3d

683, 686 (6th Cir. 2008). At a minimum, once police established a fair probability that

Abbott participated in the robberies and that Abbott resided at the Arlington addresses, they

had probable cause to search the residences for the stolen money, other tools and

equipment used during the robbery, and clothing worn during the robberies. In sum, the

affidavits established a sufficient nexus between Abbott, the alleged criminal activity, and

the locations searched.

III.    False Statement

Abbott argues he is entitled to a *Franks* hearing. *See Franks v. Delaware*, 438 U.S.

154, 155–56 (1978). He contends he has made a substantial preliminary showing that

specified portions of the affidavit were deliberately false or "showed reckless disregard for

the truth." Specifically, Abbott argues the affiant's statement that a pickup truck pulled into

the driveway of XXX39 Arlington on March 23, 2016 is a deliberately false statement

because surveillance photos show the driveway was occupied by three vehicles on the date

the officers claim they saw the suspicious truck pull into it.

In a supplementary reply brief, however, defense counsel concedes that the video

footage shows a white pickup truck pull into the driveway of XXX39 Arlington. Reply, ECF

42, PgID 265–66. He submits that the pickup truck only stayed in the driveway for 2 to 3

minutes. *Id.* But the duration of the pickup truck's stay is immaterial. The affidavit does not

mention it, *see* ECF 36-2 ¶ 39, and the Court's "review of the sufficiency of the evidence

supporting probable cause is limited to the information presented in the four corners of the

8

affidavit." *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009). Abbott has not made

a preliminary showing that officers submitted a deliberately false statement regarding the

white pickup truck's arrival at XXX39 Arlington.

Additionally, Abbott argues that a *Franks* hearing is justified because police omitted

Sutton's statement to officers that she had not seen any Foot Locker merchandise in

XXX45 Arlington. "[E]xcept in the *very rare* case where the defendant makes a strong

preliminary showing that the affiant *with an intention to mislead* excluded critical information

from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is

inapplicable to the omission of disputed facts." *Mays v. City of Dayton*, 134 F. 3d 809, 816

(6th Cir. 1998).

Here, Abbott has not made the required preliminary showing. The affidavit stated that

Sutton told officers that Abbott had access to the XXX45 residence, and that the two were

recently at the house. ECF 36-3 ¶ 40. She further stated that Abbott had been using her

car, which was parked in the driveway of XXX45 Arlington. *Id.* Officers observed numerous

boxes of shoes in Sutton's car. *Id.* Also, Sutton told officers Abbott gave her a pair of Nike

gym shoes that were in a Foot Locker bag. *Id.* The Government concedes that the affidavit

omitted Sutton's response to one of the officer's questions. The officer asked whether any

merchandise would be found in XXX45 Arlington, and Sutton replied: "I can't say, when I

was over there it was just furniture. The merchandise was here when I left for work, when

I came home, it was moved." Supp. Br. 4, ECF 41.

At best, Sutton's omitted statement neither advanced nor detracted from probable

cause because she was uncertain about the facts. In essence, Sutton told officers she

couldn't say for certain whether or not XXX45 contained stolen merchandise. Another way

to look at her statement actually supports probable cause, because she told officers the merchandise Abbott brought into XXX39 had been moved. Her statement, combined with her assertions that Abbott kept a key to XXX45 Arlington, had recently been inside XXX45 Arlington, as well as the officer's observation of merchandise inside the car parked in the XXX45 driveway could lead to a fair inference that the stolen merchandise was moved from Abbott's XXX39 residence to his XXX45 residence next door. In any event, Abbott has failed to make a preliminary showing the officers omitted the statement with the intent to mislead, or that the omitted statement would have had any effect on the probable cause determination. Therefore, no *Franks* hearing is warranted.

IV.   Good Faith

Abbott argues that the good-faith exception does not apply because the search-warrant affidavits contained facial deficiencies. As discussed above, the affidavits established probable cause and the warrants were valid. And in any event, Abbott offers no evidence or argument to show that police engaged in "deliberate, reckless, or grossly negligent conduct." *United States v. Master*, 614 F.3d 236, 243 (6th Cir. 2010). As a result, the good-faith exception bars suppression of the evidence seized with the facially valid warrants to search XXX39 and XXX45 Arlington.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant's Motion to Suppress [36] is **DENIED WITH PREJUDICE**.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
Dated: April 4, 2017          United States District Court Judge

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 4, 2017, by electronic and/or ordinary mail.

s/David P. Parker
Case Manager

11